Please call the next case. Counsel, you may proceed. Good morning, Your Honors. May it please the floor. Amanda Watson for Respondents Tri-County Personnel Management and the Illinois Insurance Guarantee Fund. Judges, this morning we come to you on an issue from an 8A evidentiary hearing and subsequent oral arguments before the Commission regarding post-arbitration medical bills incurred by a petitioner. Those just over $21,000 in bills were awarded by the Commission in the order we are appealing today. It's Respondent's position that that award of just over $21,000 in medical bills is against the manifest weight of the evidence. And we believe it's against the manifest weight of the evidence because Petitioner failed to enter a new medical expert opinion at the 8A hearing causally relating these bills and this treatment to the original work injury. Aside from the expert medical opinion, is there any medical evidence to support that this was related to the original accident? I don't believe there's any medical evidence. No. There's records of Dr. Hoffman in the 8A record, records of Dr. Tracy in the record that were submitted newly at the 2009 8A hearing. There's a history of incident, you know, sometimes in the new records it may say, well, this was an onset five days ago. We're talking about an injury that occurred in the late 90s with an MMI date of 1999. So I don't believe any of the medical records submitted at the 8A hearing do support that these are causally related. These treatments were essentially emergency rooms? Yeah, essentially, yeah. And then there were a couple, I want to say maybe four or five dates where Dr. Tracy is making comment and just a couple of dates where Dr. Hoffman, an internal medicine doctor, our seeing Petitioner. But in none of those records is there a causation opinion relating this back to the original work injury. So how did the commission conclude that the medical expenses the claimants sought stemmed from the earlier conditions? Well, I think that they wrongly relied on Petitioner and Petitioner's wife's testimony alone. This case in this 8A hearing can't be viewed in a vacuum without knowledge that we've been before the appellate court before. That there are final findings with regard to injurious practices that broke the chain of causal relation in this claim. That at the original arbitration and the appellate court upheld the original commission decision, over 80% of the post-MMI medical bills were denied. And it's clear in that appellate order and the original arbitration order that was mostly adopted by the commission. The reasons for that denial were injurious practices. It was clear in the record, I'm not here to relitigate the first case. Those findings are part of the record. Because. And in the first case the court held that the commission's decision in that regard was not against the manifest way of the evidence. Correct. Correct, Your Honor. And I think the commission now is wrongly citing to Petitioner's testimony alone to support their finding of a ward of the bills. Because causal relation in this claim, given its procedural history, and given all of the testimony that was entered in the first original arbitration, and that causal relation break, that Petitioner's testimony alone does not surprise. Let me see if I understand your position. So based on the injurious practices found earlier and upheld by this Court, there was a finding that it broke the causal connection at some point. Is that what you're saying? Yes. All right. Then all of a sudden he starts showing up in the emergency room claiming, you know, alleging there's complaints related to the earlier injury, but there's no medical evidence, opinions to support that. Correct. And we believe those are vital. And that's pointed out in the dissent of the commission in the current order before you. It's supported by the Interlake Steel case that we cited in the reply brief. And that is in this case where we have complicated circumstances and a long history. Causal relation is outside of the realm of a layman's knowledge. Now, if we were to have a simple, and in those cases, expert medical testimony is required to prove causal relation. If we had a simple case, if there was a fall of scaffolding, witnessed by coworkers, witnessed by management, emergently taken to the hospital with a broken arm, there's no break in treatment, no break in causal relation. Like a chain of events kind of a thing. Yeah, a chain of events. Then a Petitioner's testimony alone would establish causal relation. But in the Interlake Steel case and in another case cited by Johnson, there is no chain of events when there is a break in chain of events, when there is a break in causal  And so, in those circumstances, as I believe there is in this case, expert medical testimony is absolutely required. And we think that the Commission has erred in the award based on the fact that there's simply no medical evidence in the 8A record to support the award of these bills. Well, like I said, Petitioner and his wife testified at length about the condition before and after and the condition currently. It simply doesn't suffice in a case like this. Expert medical testimony is necessary. Now, a few things I'll point out about Petitioner's brief and also with regard to the Commission order that's at issue today. Petitioner cites to treatment of Dr. Tracy post-arbitration. And what I'll point out is that the large majority of Dr. Tracy's bills were part of those rejected in the original arbitration and upheld as rejected by the appellate court. Why? Well, as the appellate court stated in its order, there was plenty of evidence at the time of trial that any deterioration in Petitioner's condition after January 1999 was due to his injurious practices. Now, the Commission goes back in its order and again cites to the fact that some bills in the old arbitration were denied because of itemization, et cetera. But what the new Commission order fails to recognize is that they generally adopted the original arbitration decision, and that arbitration decision went into length as to why Dr. Tracy's bills were denied. This was not a case of just a simple itemization denial. These were two surgeries. One included a spinal cord simulator, clearly denied because of the injurious practices and the breaking causal relation because of those injurious practices. Again, we have a breaking causal relation. Again, Dr. Tracy's records pre-arbitration and post-arbitration are a good example of why that causal relation remains broken. The Commission also of concern pointed out in its order currently on review that there's no evidence in the current medical records that were brought forth at the 2009 888 hearing of new injurious practices. But I agree with the dissent in that that misses the point that it's not Respondent's position. It's not the Respondent's burden to show there's not injurious practices. Correct. And that it also misses the point that in the original record, which is pointed out in the original appellate order and in the original arbitration decision, that two doctors, Dr. Tracy and Dr. Carroll, part of testimony at the original arbitration, stated that the injurious practices caused permanent impairment, a permanent change in Petitioner's condition. And we'll never know if he would have ever needed surgery without the injurious practices. So it's not a case of, well, there was evidence of injurious practice before this emergency room visit, so it's not compensable, or there wasn't evidence before this particular visit, so it is compensable. It was established that there was permanent damage done. So I think that point by the Commission also misses the fact that Petitioner continues to bear the burden to reconnect that chain of causal relation. Simply put, Your Honors, Respondent does not argue that Petitioner has open 8A rights. That's a statement of law when we try a case and it goes before the Commission. Six weeks after our appellate court order here becomes final, Petitioner could bring us again before the Commission to seek additional medical benefits. He has those open rights, but he also bears the burden to prove causal relation. And given the history in this claim, I think an expert medical opinion is vital in the proof of that causal relation. Without it, there is no evidence to support what the Commission did in awarding over $21,000 in medical bills at hearing, and it is clearly against the manifest weight of the evidence. The Respondent respectfully requests you reverse the decision of the Commission and deny those medical bills. Thank you, Counsel. Counsel, you may respond. Thank you. May it please this Honorable Court, Counsel, Attorney Ronald Halliday for the Petitioner Patrick Gordon. I alluded to it in my brief, and as Counsel alluded to it, this has been a hotly contested matter which has been going on since 1998, and we've gone all the way up and all the way back down, and now we're all the way back up on this 8A. This wasn't such a one-sided matter that this Court just threw it out without looking at it. On the way up, it got overturned, and I was awarded $54,000 in medical bills, or Patrick Gordon. We came before the Court in 2010, and I respectfully disagree with the Court's order at that time, but I had to go with it. After that, since this case has been going on all these years, the Respondent has refused to pay a dime for any type of medical care. This just doesn't suddenly, in 2010, come up that he goes to the ER. He's gone to the ER in 2005 through 2010. I tried to bring a petition in 8A 2008, and Commissioner Lindsay refused to hear it, saying because this case was still on appeal that I couldn't bring that petition. So I waited, and then I brought it later, and shortly thereafter. He has had constant pain. When you overturned that decision that had awarded me those different medical bills and things like that, you sent it back and specifically said the World Crisis Competition Commission order still stands. Not the arbitrator's order, but the Commission's order on review. And I want to repeat here, that particular order says petitioner was entitled to continued palliative care for his undisputed conditions of reflex sympathetic dystrophy, commonly known as RSD, and depression. That order has never changed. Well, that's really not in dispute. I think your opposing counsel acknowledges that's the order, and upon the proper evidence or documentation, he would continue to be able to receive it. She has a very finite point, and I believe this Court found, was there not a finding earlier of injurious practice on behalf of the claimant? Wasn't there? Yes. All right. So if that breaks the causal connection, now she's saying, all right, he shows up now at a hospital emergency room and is complaining of symptoms or problems. What medical evidence supports the fact that it's causally connected to the accident? Because he has RSD. There's no one throughout all these things. No one disputes he had RSD. The question was how much should he get awarded if he made the injurious practices, made it worse. But that didn't. And so they said the need for these surgeries may have been because of the injurious practices. Not that he didn't have RSD. Let's assume that he does for the sake of the argument. Does the petitioner bear any burden with regard to the care following the original award? Or does he just, is he automatically entitled to medical expenses? Well, is there any burden at the hearing? No. The petitioner is entitled because the order that stands specifically, not just 8A rights, the commission ordered, and I'm reading out their commission orders, that he's still entitled to continued palliative care for his undisputed conditions of R-reflex sympathetic dystrophy and depression. It's a matter of degree. This court threw out the $54,000 that had been awarded and the other permanency stuff because they felt some of those problems may have been caused by his injurious practices. But it did not throw out the fact that it's undisputed that he had RSD. I think what my colleague is trying to get at is that that's all true, all well and good, but is there a burden on the claimant to show that subsequent bills for subsequent care be related to the condition, that they be reasonable and necessary to the condition of RSD? Yes, Your Honor. And we did show that as best we could at the 8A hearing. His wife testified and he testified that when he went to the emergency rooms for those matters and those prescriptions that he got, I think about $1,500 worth of prescriptions also that were awarded, they were for his continued pain and the records bear it out for his RSD. When he goes in, the ER records state specifically, numerous times, they've seen him there many times, he comes in for continued pain, he's got an arm like this and it's cold to touch and that's the same arm that's treated. That's the same RSD condition. That's the only thing he gets treated for. He doesn't get treated for a broken leg or a right arm. It's always this and the records are full of, the medical records which I submitted are full of records that he still has depression and he told that to all of these physicians and people in the emergency room when he went in there. I don't, that's common, I think that commonly would say that's from the RSD. Let me ask you sort of a pointed question. Is there a reason why no medical opinion was tendered or sought in this case? Because I think it was as clear as could be based on what his wife testified that they came in for the RSD and the arm and the depression. He testified to that and then it was in the records. You know, is it? Is the problem with this case, and maybe opposing counsel can address this, that the condition of ill-being experienced by your client, claimant here, has been determined to be a result of two perhaps factors. One, the incident, the accident, the incident, and two, the injurious practice and practices engaged in by a client subsequent to the incident and that there's not a way or there's not evidence here to separate out whether the current condition of ill-being which is being treated for, how much of it may be, if any, attributed to the injurious practices finding, how much to the incident that occurred at the workplace? I understand that, Judge. And that's what I think the struggle is. Just regular treatment. Emergency room for pain I think would certainly go under it. Now, if he'd have had further surgery, then I think I would have had to bring in an expert. But he was just having standard pain. My arm hurts. My arm hurts. My arm hurts. I'm depressed. I'm depressed. I'm depressed. Dr. Carroll, back in 1998, who was the IME doctor for the company, he states, three months after it happened, petitioner's prognosis is garden given the significant pain and dysfunction. He has RSD aggressive treatments indicated. Now, as I said, we battled about whether he should have wrapped his arm afterwards. And I made all those arguments that they were using wrapping techniques. If I would say if he had come in and they had installed a pain pump or he had come in and they had had further surgery, then I think maybe there might have been a question. But these were just simple ER room visits with testimony and the records talking about, if you look at those, they talk about his RSD, his pain in his elbow, and his depression from that. And then his wife, Melanie, testified, I took him because of the pain in his elbow. He hadn't done anything. There's nothing alleged or shown further that he did anything to make it worse. And as I said, I think it's important. This isn't just open A to A. This Court even said we reinstate the commission's finding that he is entitled to palliative care. And this is ‑‑ I agree with all of that. I guess what we're looking for, I'm not saying what we're looking for, but it seems to me the records would be a lot more helpful if there was something there by a proper finder of fact that said whatever he's experiencing now, his current condition of ill being, 60% is related to the injury at work. 40% could be attributable to the injurious practices that were engaged in that his condition, 40% of it is attributable to that. And then it becomes almost a mathematical calculation that when he does get treatment for pain, et cetera, et cetera, that X amount is attributable to that. I guess my response to that is I don't even know if I brought an expert testimony that they could come to that conclusion at this point, at that point in time, some five or six years after. What I'm saying is the record is for up on review. It's not our function to do that sui sponte. We have to work with the record. And it seems to me that's an issue that there are. Well, the commission and the decision that's up on review made a finding, right? I mean, they said in the commission's view, the medical expenses petitioner now seeks clearly stem from treatment for his RSD and associated depression rather than from any treatment necessitated by injurious practices. And they go on to say based on the wording of the prior decision that you pointed out, that he was entitled to future care, along with the petitioner's records and the credible testimony of the petitioner and his wife, the commission grants the expense. So they made findings of fact based on the medical records, the testimony of the petitioner, and in view of the prior decision. True? True. Well, then that goes somewhat to what I've been discussing here. Well, as I said, and I don't want to keep beating the horse, but you did specifically reinstate and keep in that clause about continued palliative care. And I think we're on the same page as to what we're arguing about. Thank you. What's wrong with the commission's findings there, given that approach? Again, I go back to the award of palliative care being a statement of law. 8A rights are open. That's a general finding. We have specific findings in awards all the time. And actually, a specific award of medical care was considered by the commission in the order before you. That was the request that a pain pump be authorized. That's a specific order for specific medical care. Well, you know, the prior commission order says he gets future palliative care for his undisputed condition of RSD and depression. And, you know, we affirm that. Then he goes into the emergency room and the records show he comes in, he says my arms hurt, I'm depressed, whatever. He's given medication for pain and depression. They come in and testify, that's why he went there. You know, why isn't that enough for the commission to decide? As they did, that these clearly stem from his treatment for RSD. You know, why is an opposite conclusion clearly apparent from the record? Well, I think if you come to that conclusion, then Petitioner's going to be owed every ER visit he goes to for arm pain for the rest of his life. Without any belief there is any hurt. He's entitled to palliative care for his reflex sympathetic dystrophy in his right arm and for his depression. Which I think, again, that is a statement of law that Petitioner, but despite the fact he is owed those rights, he's only owed those rights when it's reasonable, necessary, and causally related. They're medical care. You seem to be arguing that our review here is one of law. And yet your concluding remarks in your first argument was that the commission's decision was against the manifest weight. Aren't you arguing de novo review here? I don't believe so. My argument is based on the fact there's no medical expert opinion, no medical opinion in the record that supports Petitioner's decision. Now, a part of that is the case law of a medical expert opinion being necessitated in this case because of the complicating factors and because causal relation in the matter is not of a layman's knowledge, that it's beyond that. And that there was a causal relation break despite the fact that Petitioner's 8A rights remain open. Petitioner still had to come back with a causal connection opinion to connect his treatment in 05, 07, after the original arbitration to his original work accident. And I think, I don't know if that's necessarily arguing a matter of law because the record is devoid of evidence needed. And I think it leaves only the opposite conclusion available to the Court to find, that the commission decision is against the manifest weight of the evidence because there was no medical testimony in the record. Okay. So you're just saying, okay, back to what I was, the law of the case is, as Justice Stewart is citing, our decision was that he gets palliative care. You're saying he hasn't met his burden evidentially from an evidentiary standpoint in this instance on these particular bills. Correct, Your Honor. I mean, you know, try to simplify it. Yeah. And it's simply put. And like I said, there's sometimes specific, the pain pump was considered. And so in the future, the guy goes to the emergency room, they're going to send, let's say we affirm the commission. All right. Then he goes to the emergency room next week and his arm hurts, and then you're going to say again, now you've got to go hire an expert to testify that this particular visit, and that's what you're going to keep doing, right? Well. We're not going to pay a dime. Well. Even though the commission said he's entitled to palliative care, even though in this order they say the commission again orders respondent to authorize and pay for petitioner's ongoing palliative and psychological and psychiatric care, including but not limited to medication expenses as said care becomes necessary. So every time he gets a prescription filled, in your view, you're not going to pay a dime unless he's got an expert saying that's specifically related to his accident and not to injurious practices. Judge, it's our position today that the $21,000, slightly more bills, don't have a causal relation opinion to relate those back to the original work injury. And it would be our ambition. The one you're approaching then, the one next week, wouldn't either. Correct. Because we believe the chain of causal relation has been broken and an opinion is required in this case in order to reestablish that causal connection. It's not part of the evidence in front of you from the 8A evidentiary hearing. And again, we believe it was against the manifest way to the evidence for the commission to award these bills without such an opinion, given the procedural history of this case. You're right. It's a practicality of what Justice Stewart is saying. I mean, every time he goes to the emergency room, it would be impracticable for him to have a medical opinion to justify every bill. You're saying now because of this break with the injurious practices and now the $21,000, at some point there should be some evidence. The converse would be, to Justice Stewart's position, every time he shows up, he'd have an open-ended plain check to get medical treatment without any showing that's related, you're saying. Correct, Your Honor. Well, our problem stems from the fact you want to say the causal connection was broken. You argued that up here in front of us, didn't you? Yes, Your Honor. Yeah. And did you or how did you? Over 80% of the medical bills were denied based on the injurious practices because causal relation was broken. And that's a final finding of the appellate court. Okay. So is that the ratio that I was looking for? Because, I mean, this is going to be a big issue. Well, what I'll say is I don't think, you know, the appellate court made its findings, those are final. I'm not going to reweigh the evidence. You couldn't reweigh the evidence at the time. I don't think there was causal relation for any of those bills. But $11,000 of the 54 was awarded. And that's fine. But I still don't believe that there's causal relation. And I'm not willing to make that 80-20 split. Yeah, on these particular bills. What's that, Your Honor? On these particular bills. I mean, you know, I. Well, without a causal relation, without a medical opinion to differentiate that, that's not in the record. And that's why we're here. In the case right before us. In the case right before you. We don't have that clarification. And that clarification has to come from a medical professional, medical expert testimony. Let me just make another point here. I mean, in the case before us, I mean, the Petitioner asked for other things. I mean, the Commission differentiated and denied his request for a morphine pump in this decision that's on review and said he hasn't proved that that's medically necessary. Correct. But they said we've got sufficient proof in the medical records and the testimony for these emergency room visits. Right? That is correct. That's what they say. But we're here because I said. So they didn't give him a blank check. Correct. They specifically denied the specific request for the pain pump. But as I've said, I believe the general award of palliative care is that of open 8A rights that is subject to a burden of causal relation, a burden he did not meet here. And these bills could have been causally related by a medical expert opinion. In the record is a letter, in the 8A record is a letter Petitioner's attorney sent to Dr. Tracy requesting a narrative report. In the subsequent report submitted by Dr. Tracy, he addresses the recommended treatment. He does not address causal relation. So the record is devoid of what I believe is required to relate these bills to the original injury rather than the attorney's press. Let me just go back to what I asked you earlier. I mean, if we agree with you, then how will he ever get any treatment, you know, under the commission's decision without coming all the way to the appellate court every time? Submit a causal relation opinion from a medical expert. And then you go get an IME who says, no, it was injurious practices. You don't pay. There's a hearing. It comes up to the appellate court. It's possible. It's possible an IME would award his condition. I mean, I can't say that standing here today. But we don't even get to an IME because we don't have a causal relation opinion. Let's say that happens, that scenario that Justice Stewart is talking about, and you get up here a third time. Okay? Then let's say that claimant would prevail. It would be at that point, presumably, there would be a finding somewhere that says the current condition of ill being is X percent attributable to the work injury and Y percent attributable to what has previously been found to be injurious practices that contributes to his current condition of ill being. Presumably, there would just be one more case and it would be over, if they had the right medical evidence. Presumably, if the evidence stands as such. Right. I'm giving a hypothetical. So there wouldn't necessarily be an endless, endless controversy. Controversy. Yeah. Controversy. And respond at rest. Okay. Thank you, counsel. Thank you, counsel, both, for your arguments in this matter. This morning it will be taken under advisement and a written disposition shall issue.